UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

TERRY A. MYR,

    Defendant.
_____/

Case No. 14-20633

Honorable Nancy G. Edmunds

**OPINION AND ORDER DENYING DEFENDANT'S
MOTION FOR NEW TRIAL [35]**

On April 29, 2015, following a jury trial that began on April 22, 2015, Defendant Terry Myr ("Defendant") was found guilty of tax evasion pursuant to 26 U.S.C. § 7201 (Count 1). In addition, Defendant was convicted of willful failure to file pursuant to 26 U.S.C. § 7203 for each year 2007 through 2010. (Counts 2 through 5 respectively).

Currently before the Court is Defendant's motion seeking a new trial under Federal Rule of Criminal Procedure 33.[1] Specifically, Defendant argues that the Court should have admitted at trial a civil complaint filed by the Department of Justice seeking a permanent injunction against the business and individual who prepared a tax return that was evidence in the trial.

For the reasons stated more fully below and on the April 27, 2015 trial record, the Court denies Defendant's motion.

---

[1] Defendant cites Fed. R. Cr. P. 29 in his motion, yet the relief he seeks is a new trial. (Def.'s Mot. New Trial 1, 5, 6.)

I.  **Background**

Defendant is a self-employed automotive mechanic who specializes in exotic foreign cars. From approximately 1998 though 2001, Defendant filed individual tax returns. The IRS audited his 2000 and 2001 returns. Defendant directed a certified public accountant to prepare his 2002 and 2003 individual income tax returns, but did not file these returns. In November 2005, the IRS assessed Defendant approximately $195,163 in taxes, interest and penalties for years 2000 through 2003. Defendant neither paid nor filed another federal income tax return. In May 2007 the IRS issued a Notice of Federal Tax Lien against Defendant's property.

During 2009, Defendant negotiated to sell a rare 1954 Ferrari race car engine for $610,000. Defendant established a corporation called On Track Group, Inc. The engine purchaser wired the funds to On Track Group, Inc.'s bank account. The following year, Defendant filed a 2009 tax return for On Track Group, Inc., which reported only $500,000 in gross receipts, falsely claimed expenses in the amount of $150,000 for employee salaries, falsely claimed a "bad debt" in the amount of $330,174, and reported a loss in the amount of $10,520. The tax preparer was Dr. Denise Miller with Uneek Business Solutions. Although it was not a basis for a charge, this tax return was evidence at trial. Defendant testified that he signed and filed the return without reading it.

At trial, Defendant sought to introduce a Complaint for Permanent Injunction and Other Relief dated March 31, 2015 (the "Pope Complaint"), filed by the Department of Justice, seeking a permanent injunction against Denise Pope AKA Denise Miller, doing business as Uneek Solutions, among other names, and others, to prevent them from preparing false income tax returns. The Government objected to this evidence and the

Court denied admission of the document.

The following sidebar took place at trial when Defendant's attorney moved to admit the Pope Complaint:

> Mr. Vert: My objection is this is just a allegation, it's not an injunction, and in fact it has nothing to do with Mr. Myr's return.
>
> Mr. Becraft: Here's the original, Judge.
>
> Mr. Becraft: You read this complaint, this is filed March 31. You see the EZF (sic) stuff at the top? This is the United States suing Uneek, this company, that he did.
>
> The Court: Yeah.
>
> Mr. Becraft: And the lady that prepared the returns. And, you know, while it's true this is a complaint, it manifests the position of the United States that you sit down, you can read through this.
>
> The Court: I've seen it. Over this – is this over anything related to this corporate return?
>
> Mr. Vert: Not related to Mr. Myr as far as I can tell from the complaint.
>
> Mr. Becraft: They may be. This is what the complaint says, that the IRS is conducting a investigation. They go back to 2008, 2009, 2010, they've been investigating these people who have been making a whole bunch of false returns for a whole bunch of people, and–
>
> The Court: Unless it's specific to this return, I'm going to accept –
>
> Mr. Becraft: Okay.
>
> The Court: No, sorry, I don't think it's relevant to the defense.
>
> Mr. Becraft: Okay.
>
> The Court: I mean, he's testified how he came to her and what he thought. If this were related to his return, the On Track return I would admit it, but since it's not.
>
> Mr. Becraft: Okay, all right.

    The Court: I won't.

    Mr. Becraft: Fair enough.

    (End of discussion at side bar.)

    The Court: I've sustained the objection to this exhibit.

(Transcript p. 117-18.)

    The Pope Complaint contains specific allegations that Pope (AKA Denise Miller) and co-defendant Jones falsely claimed and/or falsely reported such items as expenses, mortgage interest, and charitable contributions.[2] (Def.'s Ex. 24, Complaint for Permanent Injunction and Other Relief, ¶ 17.) The Pope Complaint identified a sampling of individuals, by initials only, for whom tax returns were prepared. For those individuals identified in the Pope Complaint, the allegations also contain assertions that the taxpayer(s) was not the source of the false information. For example,

> Pope and Jones falsely reported that the Bs made $6,000 in cash charitable contributions in both 2010 and 2011, and $5,035 in non-cash charitable contributions in 2010, and $5,000 in non-cash charitable contributions in 2011. In fact, the Bs did not make charitable contributions in those amounts, and they did not tell Pope or Jones that they had done so.

(Def.'s Ex. 24, Compl. ¶ 18; *see also* ¶ 20, "N.T. did not tell Pope to report those amounts, nor did N.T. furnish or offer to furnish receipts or information supporting those amounts.")

    Defendant now argues that there are obvious "similarities between what the United

---

[2] The complaint alleges that the IRS examined 87 individual income tax returns and "[o]f these 87 returns, 85 were found to have false claims, and the total tax deficiency for these returns was $461,463.63." (Def.'s Ex. 24, Compl. ¶ 15.) "The IRS examinations revealed that the individual income tax returns that Pope and Jones prepare frequently claim fabricated or inflated Schedule A deductions, fabricated Schedule C income and expenses, and other fabricated deductions and credits, such as the Earned Income Tax Credit and the American Opportunity Tax Credit." (Def.'s Ex. 24, Compl. ¶ 16.)

4

States complains about in that lawsuit and the 2009 tax return of On Track . . . ." (Def.'s Mot. For New Trial 3.) Defendant argues that "[r]easonable people, including jurors, could easily conclude from reading this complaint that "Dr. Miller" had prepared a false tax return for [Defendant] and that she had duped [Defendant]." (Def.'s Mot. For New Trial 3.)

**II.    Rule 33 Motion for a New Trial**

    **A.  Standard of Review**

Defendant argues that he is entitled to a new trial pursuant to Rule 29 of the Federal Rules of Criminal Procedure. However, a motion for new trial is governed by Rule 33 of the Federal Rules of Criminal Procedure. Rule 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "The rule does not define interest of justice and the courts have had little success in trying to generalize its meaning." *United States v. Munoz*, 605 F.3d 359, 373 (6th Cir. 2010) (internal quotation marks and citation omitted). It is, however, "widely agreed that Rule 33's 'interest of justice' standard allows the grant of a new trial where substantial legal error has occurred." *Id.* This would include "reversible error or violation of the defendant's substantial rights." *Id.* at 374.

    **B.  Analysis**

        **1.  Statement By A Party Opponent**

Defendant argues that the denial of the admission of the Pope Complaint as an exhibit hampered his defense. He argues that the "allegations made by the United States in the . . . complaint, initiated via the U.S. Attorney for this district, constitute statements made by a party opponent via Fed. R. Evid. 801(d)(2)(A)." (Def.'s Mot. For New Trial 4.) The

5

Government does not argue the Pope Complaint's admissibility pursuant to Fed. R. Evid. 801(d)(2)(A). Instead, the Government argues both that the evidence is not admissible under Rule 404(a)(1) and that it is not relevant. As an initial matter, Defendant's attorney's proffer to the Court was adequate to inform the Court of the contents of the document and the alleged relevance to the defense. Defendant preserved his objection to the exclusion.

Federal Rule of Evidence 801(d)(2)(A) provides that: "(d) A statement that meets the following conditions is not hearsay: . . . (2) An Opposing Party's Statement. The statement is offered against an opposing party and: (A) was made by the party in an individual or representative capacity; . . . . " "It is the general rule that 'statements made by an attorney concerning a matter within his employment may be admissible against the party retaining the attorney.'" *Williams v. Union Carbide Corp.,* 790 F.2d 552, 555-56 (6th Cir. 1986) (citing *United States v. Margiotta*, 662 F.2d 131, 142 (2d Cir. 1981)) (The trial court "prohibited the defendant from using the allegations made in plaintiff's complaint in the first lawsuit as past inconsistent statements." The Sixth Circuit noted that the "statements made in the previous lawsuit were proper for impeachment under Federal Rule of Evidence 613. As party admissions, the allegations would also be available as substantive evidence under Federal Rule of Evidence 801(d)(2)."). Defendant provided a list of case citations that generally apply this principal to the federal government as a party opponent.

"The Justice Department's various offices ordinarily should be treated as an entity, the left hand of which is presumed to know what the right hand is doing." *U.S. v. Kattar*, 840 F.2d 118, 127 (1st Cir. 1988) (where appellant argued "that he should have been permitted to introduce into evidence the government's statements" in a memo and brief in other cases. *Id.* at 130.).

6

While Defendant cited cases from several circuits, he provided no Sixth Circuit law on the issue with respect to the federal government being deemed a party opponent in a criminal case and whether or not the prosecutors' statements should be held as party admissions. As one state court of appeals noted, in specifically considering the "admissibility of prosecutors' statements in related cases as admissions of a party opponent, . . . . [i]t is an area of law that has been significantly fractured and historically such statements were rarely admissible . . . ", yet also pointed out that "relatively recently several federal courts have endorsed generally the use of inconsistent prosecutorial statements in concluding they are not *per se* inadmissible." *State v. Pearce*, 2007 WL 1544152, at *11 (Ct. App. Id. May 30, 2007) (giving several examples of cases from the Second and Seventh Circuits where the court admitted such statements as an admission of a party opponent and where the court refused to admit such statements on that basis).

The Pope Complaint is a pleading filed in court "by a federal prosecutor who spoke for the same Justice Department that was prosecuting" Defendant. *See generally Freeland v. U.S.*, 631 A.2d 1186, 1193 (D.C. Ct. Apps. Sept. 10, 1993). The statements made in the Pope Complaint are an opposing party's statements and are not hearsay.

### 2. Relevance

However, just because something is not hearsay does not mean that it is automatically admissible. Although Defendant provides minimal analysis, the core of his argument is that reasonable people, including jurors, "could conclude from reading this complaint that 'Dr. Miller' had prepared a false tax return for [Defendant] and that she had duped [Defendant]." (Def.'s Mot. For New Trial 3.) Defendant does not cite specific statements from the Pope Complaint that show a contradictory position or statement made by the Government, nor

7

statements that support a defense that he was "duped." The Government characterizes Defendant's argument as follows: "that since the Department of Justice has alleged that Ms. Pope has prepared other false returns that she is likely to have also knowingly falsified On Track Group's return." (Gov't's Resp. 4.)

The Government argues that the civil complaint against Pope was properly excluded because it was not relevant to an issue at trial. Fed. R. Evid. 401 provides that "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.

The court may properly condition the admission of evidence upon a showing of its relevance. *See U.S. v. Beavers*, 756 F.3d 1044, 1052 (7th Cir. 2014). In *U.S. v. Beavers*, the defendant was convicted of several counts of tax fraud. *See Beavers*, 756 F.3d at 1048. Several of the defendant's tax returns "exhibited various inaccuracies" and the parties disagreed "as to whether these inaccuracies were honest mistakes or deliberate misrepresentations." *Id.* at 1048. One of the defendant's arguments on appeal was that "the district court erred by excluding evidence of his conduct after federal agents approached him– namely his amended tax returns and payments to reimburse his campaign committees." *Id.* at 1049. At trial, the government moved in limine to exclude the evidence arguing that it was not probative of the defendant's "state of mind at the time he filed the original returns and that the jury would be confused by the admission of evidence of remedial actions." *Id.* at 1049-50. The defendant argued that the "evidence was probative of his good faith and lack of intent to file fraudulent returns in the first place." *Id.* at 1050.

"[T]he district court conditioned the admission of evidence of [the defendant's]

corrective actions upon a showing that these actions had a connection to [the defendant's] state of mind at the time he filed his incorrect returns. The logic of the ruling was that, in the absence of a foundation establishing this link, the amended tax returns (and evidence of other remedial actions) did not make it more likely that [the defendant] believed his original returns were accurate when he filed them." *Id.* at 1050. The appeals court found that "the district court's sensible approach to the remedial evidence was within its discretion." *Id.* at 1051. "[T]he district court did not exclude the evidence entirely– it simply conditioned the evidence's admission on some kind of showing of its relevance to [the defendant's] state of mind at the time he filed his original returns several years earlier." *Id.* at 1050. Although unlike the case at bar in that *Beavers* involved subsequent remedial action, it is worth noting that the *Beavers'* court also pointed out that the actions for which the defendant sought to admit evidence were not probative because they were "equally consistent" with different states of mind: "(1) promptly correcting a genuine mistake and (2) trying to cover up a purposeful lie in the hope of avoiding prosecution." *Id.* at 1050.

Defendant argues that "[a]t trial, the prosecution used this tax return signed by Myr [Defendant] as substantive proof that Myr engaged in tax evasion even though Myr asserted that he had been duped by 'Dr. Miller' and Uneek Business Solutions." (Def.'s Mot. For New Trial 2-3.) He argues that he offered the Pope Complaint "[t]o buttress his contention that he was innocent regarding the obviously false 2009 tax return for On Track, . . . ." (Def.'s Mot. For New Trial 3.)

As the Court pointed out during the original motion, there is no evidence that Defendant's On Track Group, Inc.'s tax return was one of those mentioned in the Pope Complaint. Defendant cites no statements from the complaint that evidence a contrary

9

position taken by the Government with respect to the Defendant and tax years at issue. There is simply no evidence or statement in the Pope Complaint that makes facts in this case more or less probable to the issue of whether Defendant engaged in tax evasion and willfully failed to file his own taxes for years 2007, 2008, 2009 and 2010.

Evidence that the Government takes a position that Uneek and Pope filed false tax returns for multiple individuals, including several individuals identified in the complaint as not having provided false information, does not provide a link to Defendant's state of mind. It does not make any particular scenario, for example, that Defendant was "duped", more or less probable than another, for example, that Defendant purposefully found his way to a tax preparer miles away from his hometown, who could essentially make his tax liabilities disappear on paper.[3] The evidence does not meet the relevancy requirement of Fed. R. Evid. 401. Like *Beavers*, the Court asked the parties to identify the relevance of the evidence. During trial the Court asked whether there was "anything related to this corporate return" in the Pope Complaint, and the question was posed again during the post-trial hearing on the instant motion. Neither party was able to identify anything related to Defendant, the On Track Group, Inc., or its tax return in the Pope Complaint. (Trial Tr. 117-18.)

---

[3] Defendant testified at trial that he did not review the On Track Group, Inc.'s return before signing and filing it. The jury instructions included a deliberate ignorance instruction, therefore, the jury was allowed to consider all of the evidence, including Defendant's testimony, in the context of such an instruction.

### 3. Character Evidence Under Fed. R. Evid. 404

In addition to relevance, the Government argues that Fed. R. Evid. 404(a) restricts such character evidence (about Pope AKA Miller) as that which Defendant seeks to admit. Rule 404(a)(1) provides that (1) "Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." The Government correctly points out that Pope is not a witness, defendant, nor victim of a crime in this trial. The Government argues that Rule 404(a)(1) applies, yet Rule 404(b)(1) focuses on acts, as in the Pope Complaint, providing that "[e]vidence of a crime, wrong or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."

In *U.S. v. Wright*, a district court considered the admission of character evidence related to a non-party. *See U.S. v. Wright*, 206 F. Supp. 2d 609 (D. Del. 2002). In *Wright*, the defendant church minister was convicted on 19 counts alleging a scheme by which the defendant and a State Representative conspired to steal project funds: the Representative would allocate funds to qualifying projects in his district, the defendant minister drew that money from the church's account and then deposited half in his own personal account and half into the Representative's personal account. *Id.* at 611. The defendant argued that evidence of the Representative's "character and reputation for honesty and integrity was relevant and central to his defense in that '[e]vidence of [the Representative's] reputation in the community is circumstantial evidence from which a juror may rely on to [conclude] that [the Representative] would not have taken a bribe, if offered." *Id.* at 614. The court cited Fed. R. Evid. 404(a), pointing out that because the Representative "was not the

accused, an alleged victim, or a witness, evidence of his character, offered to show that he acted in conformity therewith, is not admissible evidence. Moreover, as it is the acts of the defendant . . . that were at issue in the case, an extended side-trip into the character of the now-deceased Representative . . . would have been an irrelevant distraction." *Id.* at 614.

Defendant argues that the Government used the 2009 On Track Group, Inc., tax return to demonstrate that Defendant did not act in good faith and wilfully violated the tax laws, yet his defense was that he acted in good faith. Defendant argues that necessary to "rebut the obvious inferences arising from the filing of this blatantly false return, [Defendant] needed to show the jury that the very U.S. Attorney who was prosecuting him had alleged that the party who prepared his tax return, 'Dr. Miller', believed (sic) that 'Dr. Miller' had prepared a huge number of false returns for other parties." (Def.'s Mot. For New Trial 6.) As set forth above, missing from Defendant's argument is any explanation or citation to relevant statements in the Pope Complaint related to Defendant or On Track Group, Inc. Further, Pope is not a victim, witness or party in this action.

Finally, Defendant argued at the hearing that the excluded Pope Complaint is made all the more relevant because he had little evidence in his defense. That argument does not change the analysis above. Defendant's signing and filing of the On Track Group, Inc.'s return was but one piece of evidence against Defendant to establish his intent, lack of mistake and willfulness. Examples of other evidence include the timing of the establishment of the corporation On Track Group, Inc. and the opening of a separate bank account in relation to the selling of the Ferrari engine, the removal of money from that account in smaller increments, and the purchase of gold coins with approximately half of that money, which, at the time of trial, remained hidden from the IRS.

**IV. Conclusion**

**For the above-stated reasons, Defendant's motion for new trial is DENIED.**

**SO ORDERED.**

                                              s/Nancy G. Edmunds
                                              Nancy G. Edmunds
                                              United States District Judge

Dated: August 26, 2015

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 26, 2015, by electronic and/or ordinary mail.

                                              s/Carol J. Bethel
                                              Case Manager